NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at:.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 82

No. 24-AP-074

| | |
|---|---|
| In re Pederzani Administrative Appeal (Dawna Pederzani, Appellant) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | October Term, 2024 |

Thomas G. Walsh, J.

Christian S. Chorba of Downs Rachlin Martin PLLC, Burlington, for Appellant.

Mark G. Hall of Paul Frank + Collins P.C., Burlington, for Appellees Kim Butterfield and Group Designee Ron Bliss ("Neighbors").

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **COHEN, J.**   Applicant Dawna Pederzani appeals the Environmental Division's decision denying her permit for a home business to operate a dog-rescue operation. Applicant argues that the town zoning bylaw allows kennels in residential zoning districts and therefore permits her to operate a dog-rescue operation from her home. We agree, and we reverse and remand for further proceedings consistent with this opinion.

¶ 2.    The following facts were undisputed for purposes of summary judgment, unless otherwise noted. For a number of years, applicant has operated the Vermont English Bulldog Rescue ("Rescue") out of her home in Williston, Vermont. Applicant provides temporary foster care to rescued dogs. Applicant allows the dogs to be in her backyard and walks the dogs around

her neighborhood with help from unpaid volunteers. The backyard is enclosed by a fence but does not currently contain any additional structures for the dogs.[1]

¶ 3.    Applicant's home is located in the residential zoning district of Williston and is subject to the Williston Development Bylaw.[2]  Zoning permits are decided by a zoning administrator, and any decision made by the zoning administrator may be appealed to the Development Review Board by the applicant or an interested party.  Town of Williston Development Bylaw § 5.4 (2019)[3] [hereinafter WDB], https://web.archive.org/web/20201023161532/https://www.town.williston.vt.us/vertical/Sites/%7BF506B13C-605B-4878-8062-87E5927E49F0%7D/uploads/WDB_Oct_15_2019_Complete_Document(1).pdf [https://perma.cc/Z29R-PJZV].  The Board is empowered to uphold, modify, or overturn the zoning administrator's decision. Id. § 5.4.6.  The Board's findings and conclusions may then be appealed to the Environmental Division. Id.§ 5.4.8.

¶ 4.    In September 2022, applicant received a notice of zoning violation for operating the Rescue out of her home without a permit.  Applicant responded by applying for an "after-the-fact" zoning permit for the Rescue as a "home business."  In November 2022, the zoning administrator referred applicant's application to the Board, which denied the permit.  Applicant

---

[1]  Prior to 2023, applicant had six kennel structures in her backyard.  The structures were removed in accordance with her January 2023 permit application, which is the permit application before this Court.

[2]  Neither party submitted a copy of the bylaw to the Environmental Division and is therefore not part of the record on appeal.  However, the parties do not dispute the contents of the bylaw relevant to this appeal.

[3]  At the time of the events at issue here, this version of the bylaw governed in all relevant aspects.  Intervening changes to the bylaw have adjusted the section numbering, but the relevant substantive language has not changed.  See, e.g., Selectboard, Williston Development Bylaw History of Amendments (2024), https://www.town.williston.vt.us/vertical/sites/%7BF506B13C-605B-4878-8062-87E5927E49F0%7D/uploads/WDB_Jun_04_2024_Bylaw_Revisons_Table.pdf [https://perma.cc/DT64-D6HV].  For consistency with the record on appeal, we will refer to the WDB provisions by their original numbering at the time of the events at issue.

appealed the decision to the Environmental Division, but subsequently dismissed the appeal. In January 2023, she filed a new application for a zoning permit. The new application stated that applicant had scaled back her operations such that no adoptions were conducted at the house and only one dog was allowed outside at a time.[4] The zoning administrator approved the permit. Applicant's neighbors appealed the decision to the Board, which reversed the zoning administrator's approval of the permit. Applicant appealed to the Environmental Division and neighbors cross-appealed.

¶ 5.     The Environmental Division granted neighbors' motion for summary judgment and affirmed the denial of the home-business permit. The court reasoned that a home business, as defined in the bylaw, must occur inside the home in the residential zoning district. It held that the plain language of the home-business provision prohibited any outside uses for the purposes of the business. The court declined to find a de minimis use exception to the home-business provision, reasoning that the provision was already a de minimis exception allowing business use of a residential property. The court rejected applicant's argument that she was operating a "kennel," reasoning that the bylaw provision allowing kennels was limited by the outdoor restriction for home businesses in the residential zoning district. Because it concluded that applicant's outdoor use prohibited her from obtaining a home-business permit, the court did not reach the other issues raised by the parties. Applicant appealed to this Court.

¶ 6.     We review a decision granting summary judgment de novo, using the same standard as the trial court. Vt. Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 7, 204 Vt. 215, 165 A.3d 1065. "Summary judgment is appropriate when, construing the facts as alleged by the nonmoving party and resolving reasonable doubts and inferences in favor of the nonmoving party, there are no genuine issues of material fact and judgment is appropriate as a matter of law."

---

[4] The parties disagree as to the extent of the Rescue's current and former operations. Neighbors claim there are more dogs than applicant admits.

Sheldon v. Ruggiero, 2018 VT 125, ¶ 14, 209 Vt. 33, 202 A.3d 241 (citing V.R.C.P. 56). When reviewing such a motion, we "regard as true all allegations of the nonmoving party supported by admissible evidence and give the nonmoving party the benefit of all reasonable doubts and inferences." Wood v. Wallin, 2024 VT 21, ¶ 8, __ Vt. __, 316 A.3d 266 (quotation omitted).

¶ 7. We review the interpretation of zoning bylaws without deference to the Environmental Division. In re Confluence Behav. Health, LLC, 2017 VT 112, ¶ 17, 206 Vt. 302, 180 A.3d 867. The goal in interpreting a zoning ordinance is to effectuate the intent of the drafters by examining the plain language of the ordinance at issue and the "whole of the ordinance." In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 13, 190 Vt. 132, 27 A.3d 1071 (quotation omitted). We are bound by the plain language of the bylaws unless the language "leads to an irrational result." In re Wright & Boester Conditional Use Application, 2021 VT 80, ¶ 16, 215 Vt. 593, 267 A.3d 659 (quotation omitted). Any uncertainty must be resolved in favor of the property owner because "zoning ordinances limit common law property rights." In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586, 93 A.3d 82.

¶ 8. The bylaw governing the residential zoning district in Williston allows certain uses of property that are not solely residential, such as accessory uses and structures, childcare centers, churches, elementary and middle schools, parks, and home businesses. WDB § 39.1.3. Home businesses are defined in chapter 20 of the bylaw, which governs residential improvements generally. Chapter 20 provides that "[a] home business is any commercial activity conducted in a one- or two-household dwelling by the resident/s of that dwelling, whether for profit or not, and that meets the standards established here." Id. § 20.4.1. The standards for a home business are outlined in Appendix G of the bylaw; of concern here are the provisions in Appendix G § 3(a) for outdoor workspaces:

> In the [residential zoning district], [mixed use residential zoning district] and [village zoning district] [], the space used for the proposed home business shall be within the dwelling or in an

4

accessory structure that complies with all requirements of this bylaw. Outdoor workspaces and the outdoor storage of materials, supplies, equipment, vehicles, or goods for sale are prohibited in the [residential zoning district], [mixed use residential zoning district], and [village zoning district].

¶ 9. Chapter 20 of the bylaw also contains a provision governing kennels, which are defined as "any space used to confine dogs." Id. § 20.9. The provision states that a kennel used for commercial purposes may be permitted as a home business, and the kennel provision references the home-business provision quoted above. Id.§ 20.9.1. The bylaw states that kennels must comply with the standards for kennels for "accessory structures" and "fences" contained in chapter 20. Id.§ 20.9.2.

¶ 10. Applicant argues that the Rescue qualifies as a kennel and that a kennel as defined by WDB § 20.9 may operate in the residential zoning district even if it requires outdoor use. Applicant asserts that the provision for kennels is more specific because it allows exceptions for accessory structures and fences—structures contemplating outdoor use—and therefore supersedes the more general home-business provision. Finally, she argues that any ambiguity in the ordinance should be resolved in her favor as the property owner.

¶ 11. As a threshold matter, we address whether the Rescue is a kennel under the bylaw. To determine this, we look to the plain language of the provision at issue and the whole of the bylaw. See Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 13. The bylaw's definition of a kennel is broadly worded: "any space used to confine dogs." WDB § 20.9. The undisputed facts show that applicant uses her fenced-in backyard and her home to confine dogs as part of her rescue operation, which the parties agree is a commercial use, as the term "commercial" is used in the bylaw. See WDB § 20.4.1. We therefore conclude that it falls within the definition of a kennel under the bylaw, for which a home-business permit is required.

¶ 12. We accordingly turn to whether applicant's outdoor kennel operations prevent her from obtaining a home-business permit under the bylaw. As the Environmental Division observed,

the kennel and home-business provisions are in tension. The kennel provision, which applies to residential properties in any district, clearly contemplates some outdoor use of a residential property relating to the kennel, because it refers to accessory structures and allows for higher fences. The home-business provision, meanwhile, generally prohibits outdoor workspaces and storage. When there are two conflicting provisions in an ordinance, the specific provision is held as an exception to the general provision. See In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 31, 199 Vt. 19, 121 A.3d 630. Between the home-business and kennel provisions, the kennel provision is more specifically applicable to applicant's operation.

¶ 13. Kennels are one of a few types of home businesses that are addressed in detail in the bylaw, the others being at-home childcare businesses and residential care or group homes. WDB §§ 20.7-20.9. The kennel provision provides guidance for the outdoor structures that may be used when operating a kennel, such as accessory structures and fences. Id. § 20.9.2. The Town could have specified in the outdoor-workspaces section of Appendix G that kennels are prohibited in residential zoning districts. Instead, Appendix G broadly states that "the space for the proposed home business shall be within the dwelling or in an accessory structure that complies with all requirements of this bylaw" and that outdoor workspaces and storage of materials are prohibited. Id. app. G § 3(a). It contains no reference to kennels or at-home childcare facilities, both of which may be permitted as home businesses and both of which typically involve some outdoor use. Thus, the kennel provision should be read as an exception to the home-business provision. See In re Bjerke, 2014 VT 13, ¶ 22 (explaining if there is conflict between zoning provisions, we must resolve uncertainty in favor of property owner).

¶ 14. Additionally, zoning ordinances should not be read in a way that "leads to an irrational result" or renders the language meaningless. In re Wright & Boester Conditional Use Application, 2021 VT 80, ¶ 16 (quotation omitted); In re Beliveau NOV, 2013 VT 41, ¶ 13, 194 Vt. 1, 72 A.3d 918 (applying statutory interpretation principle to "not construe a statute in a way

6

that renders a significant part of it pure surplusage" to zoning bylaws (quotation omitted)). An interpretation of the home-business provision, WDB § 20.4.1, as prohibiting outdoor uses of kennels in residential districts would render the provision permitting kennels as home businesses, WDB § 20.9.1, virtually meaningless because the operation of a kennel typically requires use of outdoor space for the proper care for dogs. This supports our conclusion that the kennel provision should be read as an exception to the home business provision.

¶ 15. We conclude that the Environmental Division erred when it held that the Rescue could not be permitted as a home business within the residential district due to applicant's outdoor use. Because the Environmental Division did not reach any of the other issues raised by the parties, we reverse the award of summary judgment to neighbors and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice